UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| RAE CHAPMAN, | ) Case No.: |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DENIS McDONOUGH, SECRETARY, | ) |
| U.S. DEPARTMENT OF VETERANS AFFAIRS, | ) |
| Et al. | ) |
| Defendant. | ) |
| | ) Date Action filed: January 2, 2023 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, Rae Chapman, by and through her undersigned counsel, and brings this action for damages against the Defendant, Denis McDonough, as Secretary of the U.S. Department of Veterans Affairs ("VA"), and alleges as follows:

**SUMMARY OF THE ACTION**

1. This is a civil rights action brought by a disabled VA employee who was seriously injured at the workplace as a result of the agency's failure to accommodate her disabilities, and who has been discriminated against by the VA because of her disabilities, because of her race and sex, and retaliated against for her complaints about this discrimination and reporting/opposing violations of rules and regulations concerning the reasonable accommodation process, and use of the Equal Employment Opportunity process, through violations of policy meant to ensure timely processing of accommodations, and subjected Plaintiff to a Hostile Work Environment through delays/denials and overall frustration of the reasonable accommodation process, lowered performance ratings, constant critical negative, and inappropriate comments, as well as denial of

complimentary and necessary equipment to perform the essential functions of her job.

2. Plaintiff has exhausted the administrative process by filing a formal complaint against the VA and proceeding to request a hearing in front of an Administrative Judge. The case number for Plaintiff's Complaint, as well as the filing date, is as follows:

> Complaint 1: Agency Case No. 200I-0516-2018105427; EEOC Case No. 510-2019-00288X; Formal Complaint filed October 18, 2018.

3. As a result of this intentional discrimination and retaliation, Ms. Chapman is seeking all available remedies, including back pay and benefits, and other compensatory damages, as well as her attorney's fees and expenses.

## JURY TRIAL DEMAND

4. Under Fed. R. Civ. P. 38 (b), Plaintiff hereby demand trial by jury on all issues triable to a jury.

## JURISDICTION

1. This action arises under Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1341 (federal question) and 1343 (civil rights).

## PARTIES AND VENUE

5. Plaintiff, Rae Chapman, is a citizen of the United States and is a resident of Pinellas County, Florida. Plaintiff is an employee of the Agency, employed as a Community Employment Coordinator (CEC) Vocational Development Specialist (VDS) at the Bay Pines facility located at 1000 Bay Pines Boulevard, Bay Pines, Florida 33744. Plaintiff is informed and believes, and alleges, that at all times relevant herein, Agency/Defendant was responsible in some manner for the

occurrences, offenses, and injuries alleged in this complaint. Plaintiff will further amend this Complaint, if needed, to show or correct for true names and capacities, and facts, when the same have been ascertained.

6. All of Plaintiff's claims arise under Federal Law.

7. Plaintiff has exhausted the required administrative remedies as she has filed her matter with the Equal Employment Opportunity Commission. Over one hundred eighty (180) days have passed since the Plaintiff filed her complaint with the EEOC. Pursuant to 29 C.F.R. §1614.407(b), Plaintiff is authorized to file this civil action in an appropriate U.S. District Court.

8. Defendant, Denis McDonough, is sued in his official capacity as the current Secretary of the U.S. Department of Veterans Affairs an agency of the United States, and Plaintiff's employer.

9. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1981a, and Defendant is subject to the personal jurisdiction of this Court in the Middle District of Florida because Defendant maintains facilities and business operations in this District, and all or most of the events and issues giving rise to this action occurred in this District at the Bay Pines facility, in Bay Pines FL, Pinellas County. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f).

10. From all times relevant to this Complaint, Plaintiff's chain of command included the following individuals: Ms. Michelle Laycox (Bay Pines SWS Homeless Chief and Supervisor); Mr. Harrison Reeder (Social Work Services Chief). For a brief time during the relevant time frame of this Complaint, Plaintiff's second line supervisor was Mr. Robert Larson as he was assigned as the Acting Chief.

11. Agency had two (2) Directors during all relevant times of this complaint, Ms. Susanne Clinker and Paul Russo.

12. Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C.

§ 7703(b)(2); as Plaintiff is employed by the Agency in Pinellas County, Florida, where the alleged offenses and injuries occurred, and plaintiff's employment records are maintained by the Agency in this judicial district.

## FACTUAL ALLEGATIONS

13. Through all relevant times giving rise to this Complaint, Plaintiff has been an employee of the VA. Plaintiff's direct supervisor has been Michelle Laycox and Plaintiff's second line supervisor has been Mr. Harrison Reeder, though Mr. Robert Larson filled in for Mr. Harrison Reeder as acting Chief and therefore was also Plaintiff's second line supervisor.

14. At all times during her employment, Ms. Chapman has been an African American lesbian Female who was fifty-four (54) years old at the time these events started. Complainant's entire chain of command was aware of Ms. Chapman's race, gender, sexual orientation, and age.

15. Through all relevant times giving rise to this Complaint, Plaintiff has suffered from asthma, carpal tunnel, post-traumatic stress disorder (PTSD), severe depression and a traumatic brain injury.

16. Through all times relevant to this Complaint, and briefly summarized, Ms. Chapman's daily duties included, but were not limited to, assisting homeless veterans in gaining employment and or assisting homeless veterans with everyday life. Ms. Chapman's position required that the agency assign her a vehicle to drive to and from visits with these veterans and a cell phone to use in order to communicate with the veterans and or the agency when she was out.

17. Prior to the filing of this Complaint, Ms. Chapman participated in a fact finding against her second line supervisor, Mr. Harrison Reeder, in which she provided testimony and or evidence that were unfavorable to Mr. Reeder.

18. Defendant's facility on the Bay Pines campus was facing multi-million-dollar repairs to the building in which Ms. Chapman would be working in when she was not out servicing veterans. The repairs were needed due to problems with the original construction of the building dating back to 1998, and to fix all damage done by of years of extensive water intrusion, which resulted in unsafe levels of microbial contamination.

19. In or around fiscal year 2017, Ms. Chapman noticed a significant decrease in her breathing and significant increase in her coughing when she would be on site at this building. Ms. Chapman proceeded to request a Reasonable Accommodation, specifically requesting an air purifier, in order to assist with her breathing and coughing. Agency never granted such request, rather the request was ignored even though numerous follow up attempts were made by Ms. Chapman.

20. On or around April 2018, Ms. Chapman, via email, requested air quality results in regard to the building that was being worked on because she began to experience significant health issues. Ms. Chapman's requests were ignored. Ms. Chapman continued to make similar requests, constantly and frequently, all through 2018 and 2019.

21. Plaintiff's conditions were caused by building exposure and Agency's failure to accommodate her which also resulted in an aggravation of a previously diagnosed condition and development of conditions that were caused by (secondary to) the disabilities that resulted from the building exposure and failure to accommodate her.

22. Ms. Chapman attempted to avoid taking time off from work. However, when given the opportunity for time away from the building, her good health returned, and her symptoms would subside. Initially she would recover when she was away from the building on weekends, holidays, sick leave, etc. But upon returning to the building, her symptoms increased in number, complexity and intensity, substantially impairing her from major life activities and

performance of her essential functions. The longer Ms. Chapman was away from the building, the healthier she would become.

23. On or around April 2018, Ms. Chapman, via email, requested air quality results in regard to the building that was being worked on because she began to experience significant health issues. The Responsible Management Officials (RMO) did not appreciate this request.

24. On or around May 16, 2018, Ms. Chapman was assigned a new Local Reasonable Accommodation Coordinator (LRAC), Mr. Gerald Vogelsang, and Ms. Chapman immediately reached out to Mr. Vogelsang regarding the status of her Reasonable Accommodation.

25. Mr. Vogelsang never participated in any sort of interactive process with Ms. Chapman to try and resolve the issue(s) and provide her with the Air purifier. Rather, Mr. Vogelsang delayed the process by failing to adhere to proper guidelines and protocols. Mr. Vogelsang also, and against any and all agency policy, proceeded to disclose Ms. Chapman's medical documentation, which very clearly outlined her conditions, directly to Ms. Chapman's chain of

26. On or around November 2018, over one and a half years after her initial request, Agency finally provided Ms. Chapman with an air purifier. However, the air purifier provided was made for space not to exceed eighty-five (85) feet and Ms. Chapman's office was over two hundred (200) feet, making the air purifier completely useless. Agency never tried to provide an alternative to the air purifier even though Ms. Chapman made her deteriorating health very clear to the LRAC as well as her entire chain of command.

27. Throughout this relevant time period, a white male employee, whom to the best of Ms. Chapman's knowledge did not participate in any fact finding against Mr. Reeder, and who had also made a reasonable request for an air purifier, received the purifier almost immediately.

28. Rather than assist Ms. Chapman and or provide her with the help her health demanded, almost immediately after Mr. Vogelsang inappropriately disclosed Ms. Chapman's medical conditions to her chain of command, and almost immediately after Ms. Chapman made constant and consistent requests to get air quality results from the building agency forced her to work in, agency began to treat Ms. Chapman differently, by taking away essential tools and equipment necessary for her to do her job, began harassing Ms. Chapman by making inappropriate comments and inexcusable threats, and overall, started lowering her performance reviews.

29. On or around May 31, 2018, roughly two (2) weeks after being inappropriately informed of Ms. Chapman's conditions, Ms. Chapman's second line supervisor, Mr. Harrison Reeder, came into the workplace in the early morning and approached Ms. Chapman in a very aggressive and threatening manner. Shortly thereafter, Mr. Reeder proceeded to make rude, inappropriate, and threatening comments to Ms. Chapman. Mr. Reeder said words to the effect of " I got this list from Gerald (LRAC) of all the things that are wrong with you and we need to do for you…and if we were to do any of these things it would take three (3) of us to tell you how to do your job and that is ridiculous…it just can't happen." Mr. Reeder proceeded to then scrutinize Ms. Chapman's employment by stating things to the effect of "if you can't explain to me why you're worth a hundred thousand dollars…nobody is going to understand why we keep this position." Ms. Chapman asked Mr. Reeder to stop and or change his tone numerous times, but Mr. Reeder never did. This barrage triggered Ms. Chapman's PTSD almost immediately.

30. Ms. Chapman's position requires that she use a cell phone and or keep a cell phone on her at all times. Ms. Chapman accidentally lost a government cell phone and had to request a new one be issued. However, shortly after this barrage, Ms. Chapman's request for a government

cell phone was denied. The denial of a phone negatively impacted Ms. Chapman's ability to perform the essential functions of her job.

31. On or around June 20, 2018, less than a month after Mr. Reeder berated Ms. Chapman about her disabilities and expressed his frustrations with the fact that Ms. Chapman had a disability, Ms. Chapman had a meeting with her direct supervisor, Ms. Laycox, in which Ms. Laycox explained that Ms. Chapman would be receiving a fully successful on her 2018 fiscal year performance reviews.

32. On or around June 22, 2018, contradictory to what she was told two (2) days earlier, Ms. Chapman received an email from LRAC Gerald Vogelsang explaining that Ms. Chapman's work performance was marginal, and management is seeking to transfer her. Ms. Chapman made numerous attempts to receive clarification as issues with her performance never existed the previous four (4) years she performed these same exact duties, but her requests were ignored. To date, Ms. Chapman never requested a transfer, yet agency took it amongst themselves to threaten her with one. To date, Ms. Chapman's 2018 performance reviews still state that she is rated lower than fully successful, yet no explanation and or viable reason has ever been provided.

33. On or about July 2018, Ms. Chapman was required to attend a meeting with Ms. Laycox and Mr. Reeder. In that meeting, Mr. Reeder threatened to take Ms. Chapman's vehicle away because she may have serious cognitive issues. However, Ms. Chapman's doctor clearly stated she is very well to drive and Ms. Chapman has a valid driver's license. Yet, in a deliberate attempt to further berate, threaten, and prevent Ms. Chapman from being able to perform her duties, agency threatened to take her government issued vehicle away.

34. On or around August 2018, and after Ms. Chapman's performance reviewes were rated as less than fully successful for the first time in her career, her direct supervisor began to assign

Ms. Chapman additional duties. Such duties required that Ms. Chapman remain at the facility, rather than go out in the community. Per Ms. Chapman's position description, in order to perform the essential functions of her position, she would need to spend at least eighty percent (80.00%) of her time out in the community. These additional tasks required that Ms. Chapman stay at the Bay Pines location, making it impossible for Ms. Chapman to achieve the necessary goals of her position.

35. Agency's actions significantly changed only *after* Ms. Chapman participated in a fact finding against her second line supervisor, only *after* the LRAC inappropriately shared Ms. Chapman's medical conditions with her chain of command, and only *after* Ms. Chapman demanded answers and solutions regarding the mold infested building she was forced to work in.

36. To the best of Plaintiff's knowledge, she has seen and or heard of other similarly situated employees, who were males, and or Caucasian, and or straight (sexual orientation), and or did not participate in any EEO protected activity, and or not have similar disabilities, be granted and receive timely reasonable accommodation requests.

37. To the best of Plaintiff's knowledge, she has seen and or heard of other similarly situated employees, who were males, and or Caucasian, and or straight (sexual orientation), and or did not participate in any EEO protected activity, and or not have similar disabilities be transferred to a building that was not suspect to mold.

38. To the best of Plaintiff's knowledge, she has seen and or heard of other similarly situated employees, who were males, and or Caucasian, and or straight (sexual orientation), and or did not participate in any EEO protected activity, and or not have similar disabilities be treated with respect and provided the necessary equipment to perform the essential functions of their position(s).

39. To the best of Plaintiff's knowledge, she has seen and or heard of other similarly situated employees, who were males, and or Caucasian, and or straight (sexual orientation), and or did not participate in any EEO protected activity, and or not have similar disabilities receive accurate performance reviews.

40. To date, Plaintiff is still being retaliated against and treated different than similarly situated employees.

**Count No. 1**
**Violations of the REHABILITATION ACT OF**
**1973 29 U.S.C. §701 et. seq.**
**(Disability**
**Discrimination)**

41. The allegations in paragraphs 1-40 are realleged as if set forth fully herein.

42. Defendant, an Agency of the Federal Government, is subject to the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq., under sections 501 and 504.

43. Section 501 of the Rehabilitation Act prohibits federal executive branch agencies from discriminating against people with disabilities in any employment practices, including hiring, promotions, training, firing, pay, or benefits. 29 U.S.C. § 791.

44. Plaintiff is a disabled person whose physical impairments substantially limits her major life activities.

45. Plaintiff was qualified for the positions she held at the Bay Pines facility.

46. Defendant knew of Plaintiff's disabilities.

47. Pursuant to 29 U.S.C. § 791(f) and 42 U.S.C. § 12203(a), Defendant has violated Section 501 of the Rehabilitation Act by:

    a. Failing to provide effective reasonable accommodations for Plaintiff;

    b. failing to engage in interactive discussions as part of Plaintiff's reasonable accommodation requests;

    c. unduly delaying the processing of Plaintiff's RA requests;

    d. requiring unnecessary medical documentation for Plaintiff's RA requests for disabilities that were already known and documented with Defendant;

    e. treating Plaintiff overly critically as compared to other employees to the point of harassment, creating a hostile and abusive work environment for her based on her requests for RAs;

    f. violating Plaintiff's Privacy rights by disclosing sensitive medical information relating to her disabilities to personnel that did not have a need to know.

48. As a direct and proximate result of Defendant's violations of Section 501 of the Rehabilitation Act, Plaintiff, Ms. Chapman has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

49. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

### Count No. 2
### Violations of the REHABILITATION ACT OF 1973  29 U.S.C. §701 et. seq.
### (Failure to Accommodate)

50. The allegations in paragraphs 1-40 are realleged as if set forth fully herein.

51. Plaintiff notified her employer of her disabilities and requested accommodations on multiple occasions from 2017-2019.

52. Plaintiff was provided multiple inadequate accommodations in response to her multiple requests for RAs with respect to her disabilities.

53. As a direct and proximate result of Defendant's violations of Section 501 of the Rehabilitation Act, Plaintiff, Ms. Chapman has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

54. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

### Count No. 3
### Violations of the REHABILITATION ACT OF 1973  29 U.S.C. §701 et. seq.
### (Privacy Violations)

55. The allegations in paragraphs 1-40 are realleged as if set forth fully herein.

56. Plaintiff notified her employer of her disabilities and requested accommodations on multiple occasions from 2017-2019.

57. Plaintiff provided various medical documentation to Defendant throughout 2017-2019 for the purposes requesting Reasonable Accommodations.

58. Defendant violated Plaintiff's privacy rights by failing to store her sensitive medical information securely and disclosing her sensitive medical information to personnel that did not have a need to know.

59. As a direct and proximate result of Defendant's violations of Section 501 of the Rehabilitation Act, Plaintiff, Ms. Chapman has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

60. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

### Count No. 4
### 42 U.S.C. §§ 2000e, et seq.
### (Hostile Work Environment)

61. The allegations in paragraphs 1-40 are realleged as if set forth fully herein.

62. Section 504 of the Rehabilitation Act of 1973 prohibit discrimination based on an individual's disability and retaliation for the exercise of the rights it protects, including engaging in or participating in EEOC protected processes.

63. Defendant is liable for the retaliation alleged herein including, but not limited to, paragraphs 1 through 40 which actions all adversely affected the terms and conditions of Plaintiff's employment in violation of the Rehabilitation Act.

64. Defendant is also liable for subjecting Ms. Chapman to a hostile work environment and disparate treatment in retaliation for the exercise of rights protected under this Section.

65. As a direct and proximate result of Defendant's unlawful and retaliatory acts in violation of Title VII of the Civil Rights Act, Plaintiff, Ms. Chapman has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

66. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

## Count No. 5
## Retaliation in Violation of Title VII
## 42 U.S.C. §§ 2000e, et seq.
**(Retaliation in Violation of Title VII)**

67. The allegations in paragraphs 1-40 are realleged as if set forth fully herein.

68. The actions taken by Defendant, as described herein, violate Plaintiff's rights under Title VII of the 1991 Civil Rights Act and Amendments thereto.

69. Defendant unlawfully targeted Plaintiff, because of she participated in a fact finding investigation against her chain of command and because she made contact with the local EEO office regarding this complaint, in order to berate and threaten her, lower her performance reviews, and overall make it almost impossible for Plaintiff to conduct the essential functions of her position.

70. As a direct and proximate result of Defendant's unlawful acts in violation of Title VII of the Civil Rights Act, Plaintiff, Ms. Chapman, has been damaged. Such damages include, but are not limited to, loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to

professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

71. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELEIF

WHEREFORE, Ms. Chapman respectfully requests that the Court enter judgment in her favor and award her the following relief:

a) An Order declaring that Defendant violated Ms. Chapman's rights under Title VII of the 1991 Civil Rights Act and Amendments thereto, and restraining and enjoining Defendant from further violations;

b) Enter injunctive relief ordering Defendant to retroactively promote plaintiff or a comparable position within the agency to make her whole for the unlawful denial of her reasonable accommodation requests, and to provide effective, civil rights training for all managerial employees at the t Bay Pines VAMC on the requirements of all applicable laws prohibiting employment discrimination because of disability and unlawful retaliation against employees for complaining about unlawful disability discrimination.

c) Award plaintiff back pay for lost wages and benefits and prejudgment interest thereon and promotion to positions wrongfully denied, or, in lieu thereof, front pay for future lost wages and benefit;

d) Compensatory damages in an amount to be determined at trial to compensate Ms. Chapman for the emotional pain, embarrassment, humiliation, mental anguish, medical costs, future medical costs, inconvenience, career loss, loss of professional reputation and

career opportunities, and loss of quality of life caused by Defendant's unlawful actions;

e) Any and all accrued Thrift Savings Plan benefits;

f) Award Plaintiff her full costs and reasonable attorney's fees; and

g) Award such further relief as may be deemed just and appropriate.

Dated: January 2, 2023

Respectfully submitted,

**/s/Andi Kasimati**
Andi Kasimati
Solomon, Maharaj & Kasimati, P.A.
5005 W. Laurel Street, Suite 216
Tampa, FL 33607
Office: (813) 497-7650
Andi@smkfirm.com

Attorney for Plaintiff Rae Chapman